**WO**

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Managed Protected Services, Incorporated, legally-appointed Guardian and Conservator for protected person: conservator for Craig Allen Winjum,<br><br>Plaintiff,<br><br>v.<br><br>CREDO Petroleum Corporation, a Delaware Limited Liability Company; et al.,<br><br>Defendants. | No. CV-12-00080-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendant CREDO Petroleum Corp.'s motion to change venue (Doc. 18) and, in opposition, Plaintiff Managed Protective Services, Inc.'s motions for venue discovery (Doc. 21), and motion for surreply (Doc. 24). Defendant CREDO has also filed a motion to strike (Doc. 27), in response to this latter motion by Plaintiff. For the reasons stated below, the Court denies Defendant's motion for venue transfer (Doc. 18), and denies as moot the other motions above.[1]

---

[1] Plaintiffs' request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

1

## BACKGROUND

In March 2010, CREDO Petroleum Corp. ("CREDO") entered into a written contract to buy and sell real estate with Craig Allen Winjum, the probable owner of eighty (80) acres of real property located in Dunn County, North Dakota. (Doc. 17, ¶¶ 13–14). Five months after this contract was executed, Mr. Winjum executed a Warranty Deed for the same property. (Doc. 17, ¶ 20).

Mr. Winjum has had a history of behavioral, health and substance abuse issues, which "significantly affect his judgment and decision making abilities" and which render him "peculiarly susceptible to being taken advantage of or being exploited." (Doc. 17, ¶¶ 24–29, 32). Fifteen months after the execution of the contract, in August 2011, Managed Protective Services ("MPS") was appointed Mr. Winjum's Guardian and Conservator. (Doc. 17, ¶ 2). In October 2011, MPS petitioned the Superior Court of Arizona to invalidate the contract and Warranty Deed. (Doc. 17, ¶ 37). MPS requests the Court restore legal title to Mr. Winjum, or to provide some other equitable relief to permit Mr. Winjum to avoid and invalidate the property transfer, and to do so without requiring Mr. Winjum to restore any benefit or consideration because, *inter alia*, CREDO and its agents "knew or should have known of Winjum's impairment and incompetency at the time of contracting." (Doc. 17, ¶ 37).

Prior to being contacted by CREDO's agent, Mr. Kemp, Mr. Winjum was unaware of his ownership of the land, which had previously belonged to his brother, who died intestate. (Doc. 22 at 2; Doc. 17, ¶ 35). Mr. Kemp, "a resident of South Dakota and experienced North Dakota landman," (Doc. 18 at 3) placed several calls into Arizona

(Doc. 18 at 3), and travelled to Arizona for the execution of both the Contract and the Warranty Deed with Mr. Winjum. (Doc. 18 at 3).

## DISCUSSION

As the land in question is located in North Dakota, Defendants have moved for venue transfer. (Doc. 18). Plaintiff has opposed the venue transfer and, in the alternative, has moved for limited discovery on the question of venue. (Docs. 20, 24). For the reasons stated below, the Court denies Defendants' motion.

**I.   Legal Standard**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendants argue that this case should be transferred to the District of North Dakota because the action could have been brought in that district and because the balance of factors counsels that it would be more convenient and fair to litigate this matter there. (Doc. 18). Plaintiff does not dispute that this action could have been brought in the District of North Dakota, but rather disputes only that the balance of factors suggests that it is more convenient and fair to litigate this case in the District of Arizona. (Doc. 20). The Court must therefore determine whether CREDO has made "a strong showing of inconvenience to warrant upsetting [Plaintiffs'] choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).

3

Such a determination requires the weighing of several factors: (1) the convenience of the parties, (2) the convenience of witnesses, (3) the availability of compulsory process to compel unwilling witness attendance, (4) the availability of witnesses and their live testimony at trial, (5) the ease of access to sources of proof, (6) the differences in the costs of litigation in the two forums, (7) contacts with the chosen forum, (8) jurisdiction over the parties, (9) the state most familiar with the governing law, and (10) the relevant public policy of the forum state. *See* 28 U.S.C. § 1404(a); *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 639 (9th Cir. 1988); *Decker Coal,* 805 F.2d at 843; *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.,* 472 F. Supp. 2d 1183, 1196 (S.D. Cal. 2007); *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir. 2000).

**II.     Analysis**

Setting aside those factors which are neutral or near equivalent between the parties, the Court finds that the relevant factors in this case are (1) the convenience of the parties and (2) witnesses, (3) the availability of compulsory process, (4) the forum selection clause and relative financial burdens, and (5) the interests of justice.

**A.     Private Interests**

**1.     Plaintiff's Choice of Forum and Convenience of Parties**

Plaintiff's choice of forum is to be given "substantial deference" where the plaintiff has chosen its home forum. *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d. 48, 52 (D.D.C. 2000). "A court should not lightly disturb a plaintiff's choice of forum. This is especially true where the forum plaintiff chose is not only his domicile but also has a significant

4

connection with the subject matter of the case." *Holder*, 1997 WL 14339, at *8 (citation omitted); *see Int'l Comfort Prods., Inc. v. Hanover House Indus., Inc.*, 739 F. Supp. 503, 506 (D. Ariz. 1989) ("International's choice of forum will not lightly be disturbed and may prove significant if International's contacts with Arizona are significant."). Defendant "must make a *strong showing of inconvenience* to warrant upsetting [P]laintiff's choice of forum." *Decker Coal*, 805 F.2d at 843 (emphasis added).

Plaintiff in this case has chosen Mr. Winjum's home forum which, given both the agent's phone calls and travel into the forum, (Doc. 20 at 56, 10), and that it was the location of the Contract negotiation and execution, has "significant connection with the subject matter of the case." This factor is not, by itself, dispositive, *Impra Inc. v. Quinton Instruments Co.*, 17 USPQ2d 1890, 1891 (D. Ariz. 1990). Either party in this case would be inconvenienced by litigation in the other's chosen forum. Each has extensive contacts in its chosen forum and minimal contacts in the forum of the others' choosing. However, this factor, given the limited number of parties involved, and the preference for the Plaintiff's choice of forum, weighs in favor of Plaintiff.

### 2. Convenience and Availability of Witnesses

Nor does the convenience of witnesses change the balance of private interests. Each party has indicated that a number of material witnesses would be inconvenienced by having to travel to another forum. Given that this case will take place either in North

Dakota or Arizona, and that the parties have identified witnesses in both states, it appears that both party and non-party witnesses will need to travel cross-country to testify.[2]

In *Herbert Ltd. P'ship v. Elec. Arts Inc.*, a contract dispute, the court found that "more witnesses with more material testimony" specific to the disputed contract were located in California, and that this was a relevant factor in granting defendant's request to transfer venue to that state. 325 F. Supp. 2d 282, 288 (S.D.N.Y. 2004). Here, however, the balance of witnesses with material testimony specific to the disputed contract weighs in favor of not transferring venue. As in *Herbert*, this case appears to stand or fall on contract issues: it appears that resolution will turn on Mr. Winjum's competence to enter into the contract. If Mr. Winjum was clearly incompetent at the time of the negotiations and execution, then Plaintiff may have established a case of constructive trust. *See, e.g., Wildfang-Miller Motors, Inc. v. Miller*, 186 N.W.2d 581 (N.D. 1971) (recognizing constructive trusts in North Dakota law); *Condos v. Felder*, 92 Ariz. 366, 371, 377 P.2d 305, 308 (1962) (recognizing same in Arizona law). MPS has identified witnesses with

---

[2] Defendants did not identify several witnesses until their Reply. This Court does not address this and other arguments made for the first time in the Reply brief, as it is unfair to deprive Plaintiff of the opportunity to respond. *See Delgadillo v. Woodford*, 527 F.3d 919, 930 n. 4 (9th Cir. 2008) ("Arguments raised for the first time in [the] reply brief are deemed waived."); *Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.*, 663 F. Supp.2d 841, 848 (D. Ariz. 2009) ("The Court need not consider Defendants' position, however, since it was first raised in their reply brief . . . . Thus, even if the argument has merit, this Court cannot appropriately consider it, since Plaintiffs did not have the opportunity to respond.") From Defendant's original motion, however, it appears that legal counsel in North Dakota involved in settling the estate may be a North Dakota-based witness for Defendant. (Doc. 18 at 3).

relevant knowledge located in Arizona, who can testify to Mr. Winjum's mental health, including Mr. Winjum's treating psychologist and other acquaintances of Mr. Winjum. Overall, the Court concludes that more witnesses with more material testimony reside in Arizona than do in North Dakota.

### 3.     Availability of Compulsory Process and Live Testimony

The "availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Arrow Elecs., Inc. v. Ducommun, Inc.,* 724 F. Supp. 264, 266 (S.D.N.Y. 1989). In this case, all of CREDO's witnesses appear to be located outside of Arizona, and beyond the subpoena power of this Court. While live testimony is preferred whenever feasible, *see Hess v. Gray,* 85 F.R.D. 15, 25 (N.D. Ill. 1979), the Court's lack of subpoena power may be solved through the use of deposition testimony or video conference. Additionally, Defendant CREDO could require their employees to travel to Arizona for trial. *See Berry v. Potter,* No. CIV 04–2922-PHX-RCB, 2006 WL 335841, at *5 (D. Ariz. Feb. 10, 2006) (discounting inconvenience to a party's employees who could be compelled to testify as witnesses); *FUL Inc. v. Unified Sch. Dist. No. 204,* 839 F. Supp. 1307, 1311 (N.D. Ill. 1993) ("[I]t is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily[.]") Were venue to be transferred to North Dakota, Mr. Winjum would have no such power to compel his witnesses to travel. Therefore, the availability of compulsory process and the availability of live testimony at trial weigh slightly in against transfer.

/ / /

### 4. Forum Selection Clause and the Relative Financial Burden

CREDO argues that the real property in question is located in North Dakota, and that the Contract in question dictates that "any disputes arising from such contract shall be governed by and construed in accordance with North Dakota law." (Doc. 18 at 5). *Hoffman v. Minuteman Press Int'l, Inc.*, consists of facts similar to the case at hand. 747 F. Supp. 552 (W.D. Mo. 1990). In *Hoffman*, "small, unsophisticated business people" alleged that they "were fraudulently induced to enter into franchise agreements" which contained forum selection and governing law clauses. *Id.* at 559. Noting the disparate financial burden on the parties, the *Hoffman* court refused to transfer venue to the defendant franchisor noting that "[t]hese plaintiffs deserve their day in court. If they successfully prove their allegations of fraud, the forum selection clause is not worth the paper on which it is written. To enforce such a clause on the front end in cases like this one would be grossly unfair." *Id.*

Similar allegations are at the heart of this case: an unsophisticated, indigent, mentally ill person was allegedly induced to enter into a real estate contract he could not understand, and would not have entered into had he not been mentally ill. Thus framed, key portions of the merits of this case will revolve around the question of whether Mr. Kemp knew, or should have known, at the time of the signing of the contract of Mr. Winjum's mental illness.  (Doc. 20 at 6). While contractual terms are presumptively enforced, "if the inclusion of the clause was the product of fraud or overreaching," or "would effectively … deprive" Plaintiff "of his day in court," enforcement of the clause is

unreasonable. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, (1972))

Beyond the question of overreaching, and unequal bargaining position, at the time the Contract was negotiated and executed, Mr. Winjum may not get his day in court if venue is transferred to North Dakota. Mr. Winjum's "extraordinarily limited financial resources" and "income consist[ing] of very minimal federal benefits" very clearly weigh against selection of North Dakota as the venue for this action. (Doc. 20 at 14). While the cost for Mr. Winjum of litigating in North Dakota may mean that he is unable to proceed with his case, (*Id.* at 15 n.8), the same is presumably not true for an oil exploration company. The costs of sending its agent into the forum state repeatedly to secure the disputed Contract does not appear to have been overly inconvenient for CREDO; nor then should the costs of travel to defend the same Contract in the same forum state be overly inconvenient.

Transfer of venue "is not appropriate . . . when the transfer merely shifts the inconvenience from one party to another." *Impra, Inc. v. Quinton Instruments Co.,* CIV-90-0383 PHX WPC, 1990 WL 284713 at *2 (D. Ariz. June 26, 1990); *see also Decker Coal*, 805 F.2d at 843 (holding that district court did not abuse its discretion in denying motion to transfer in part because "[t]he transfer would merely shift rather than eliminate the inconvenience"). It is particularly inappropriate when, as here, the burden of such a transfer would not be equally distributed.

///

### B.     Interests of Justice

The interests of justice also weigh against venue transfer. While Defendant urges that North Dakota has an interest in resolving disputes involving property within its borders, Arizona has an interest in "ensuring that its residents are compensated for their injuries." *Magedson v. Whitney Information Network, Inc.*, 2009 WL 113477 (D. Ariz. 2009).  Arizona particularly has an interest in protecting its citizens who may be impaired or vulnerable. *See, e.g.,* A.R.S. §46-456 (duties to vulnerable adult). The North Dakota property would not have transferred had it not been for the Contract, which was negotiated and executed in Arizona by an Arizona resident.

Defendant has not met its burden of proving that the relevant factors, as a whole, constitute "a strong showing of inconvenience to warrant upsetting [Plaintiff's] choice of forum." *Decker Coal,* 805 F.2d at 843. Given that the relevant factors all support litigating this case in Arizona, this case will continue in the District of Arizona.

### CONCLUSION

In summary, the appropriate factors weigh against transfer. Many of the factors carry little or no weight, either because they do not apply to the circumstances of this case or because they are relatively neutral with respect to both parties. However, the critical factors involving the plaintiff's choice of venue, convenience of parties and witnesses, availability of compulsory process and the relative financial burden weigh in favor denial of Defendant's motion to transfer.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Transfer of Venue (Doc. 18) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's motions for venue discovery, (Doc. 21), and for surreply (Doc. 24), as well as Defendant's motion to strike (Doc. 27) are **DENIED AS MOOT.**

Dated this 9th day of August, 2012.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge